795 A.2d 892

FULVIO STANZIALE AND COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, LOCAL 1040, PLAINTIFFS–APPELLANTS, v. MONMOUTH COUNTY BOARD OF HEALTH AND MONMOUTH COUNTY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 17, 200—Decided April 26, 2002

Before Judges CONLEY, A.A. RODRIGUEZ and LEFELT.

*Rosemarie Cipparulo,* argued the cause for appellants (*Weiss-man & Mintz,* attorneys; *Ms. Cipparulo,* of counsel and on the brief).

*Frederick P. Niemann,* argued the cause for respondents (*Malcolm V. Carton,* Monmouth County Counsel, attorney; *Mr. Niemann,* Assistant County Counsel, on the brief).

The opinion of the court was delivered by

CONLEY, P.J.A.D.

█ Plaintiffs appeal a summary judgment in favor of defendants dismissing plaintiffs' complaint. The complaint sought a declaration that *N.J.S.A.* 26:3–25.1, which mandates that certain local health employees receive the maximum salary in their respective salary ranges after five years of service, applies to licensed Registered Environmental Health Specialists (formerly Sanitary Inspectors) employed by defendant Monmouth County Board of Health (Board). The complaint also sought an award of back pay for plaintiff Fulvio Stanziale who, as of September 1995 had been employed by the Board as a Registered Environmental Health Specialist for five years, was still so employed as of the date of the complaint, February 2000, yet had never received the maximum salary for that position. The trial judge concluded, as a matter of law, that *N.J.S.A.* 26:3–25.1 does not apply to a county board of health. We disagree and reverse.

The critical facts are easily set forth. Following the enactment of the Local Health Services Act, *N.J.S.A.* 26:3A2–1 to –35, *L.* 1975, *c.* 329, the Monmouth County Board of Chosen Freeholders

created the Board. As required by *N.J.S.A.* 26:3A2–6, the Board's first resolution, Resolution # 1–1978, was to create a county health department. The certification from the Monmouth County Public Health Coordinator, filed in support of defendants' motion for summary judgment, refers to plaintiff Stanziale as employed by the county health department. It is, however, asserted in the complaint, admitted in defendants' answer and clearly established by the Board's Resolution # 33–90, which memorializes plaintiff's employ, that plaintiff's employer is the Board. We make a point of this at the outset as this fact is critical in our analysis of *Mizerak v. County of Middlesex*, 230 *N.J.Super.* 577, 554 *A.*2d 476 (App.Div.1989), *certif. denied*, 121 *N.J.* 617, 583 *A.*2d 316 (1990), which held that *N.J.S.A.* 26:3–25.1 does not apply to a sanitary inspector employed by the Middlesex County Health Department, and in our rejection of the trial judge's view that *Mizerak* is controlling here.

We begin with the statute. *N.J.S.A.* 26:3–25.1 (hereinafter § 25.1) provides:

Every person holding a license issued under section 41 of *P.L.* 1947, c. 177 (C:26:1A–41), who is employed in a position for which this license is required by *any board of health*, municipality or group of municipalities shall receive the maximum salary in the person's range, within five years from the date of appointment to this position if the majority of the person's job performance evaluations are satisfactory.

[Emphasis added.]

"[A]ny board of health," facially, would seem to include a county board of health.

This clarity of facial meaning is somewhat clouded, however, because Chapter 3 of Title 26, in which § 25.1 is located, is captioned "*Local* Boards of Health" (emphasis added). In the early ages of our State implemented local health services scheme, the primary responsibility for public health protection was delegated to the municipalities. Over time, the Legislature recognized the need for a broader approach to health services. Certain

County Boards of Health were legislated early on, *see N.J.S.A.* 26:11–1 to –31, repealed by *L.* 1975, *c.* 329, § 21, but the county board of health as a viable option was not effectively legislated until the 1975 Act. *See generally,* New Jersey County and Municipal Government Study Commission, Community Health Services: Existing Patterns—Emerging Trends (November 1974) (*1974 Study Commission*), pp. 7–10; Interim Report of the Governor's Committee on Local Health Administration (June 1, 1950) (*1950 Interim Report*), pp. 7–9.

Thus, when originally enacted in 1947, § 25.1 applied to persons employed by a "municipality or group of municipalities." *L.* 1947, *c.* 181, § 5. But when amended in 1950 to extend to "any board of health," county boards of health were very much in the contemplation of the Legislature. *See generally* 1974 *Study Commission; 1950 Interim Report.* Moreover, over the history of Title 26 and its various legislative enactments, the term "local boards of health" invariably has been defined in such a way as to encompass a county board of health. *See N.J.S.A.* 26:1–1; *N.J.S.A.* 26:1A–1; *N.J.S.A.* 26:3–69.1. As we said in *Mizerak v. County of Middlesex, supra,* 230 *N.J.Super.* at 581, 554 *A.2d* 476, "[s]ection 25.1 preceded the *Interim Report,* but must be considered in context with the history of health legislation described in the [*Interim Report*]. . . ."

■ Both facially, then, and consistent with the legislative history of local health services enactments, we are convinced the term "any board of health" as used in § 25.1 applies to a county board of health. We are further convinced that not only does *Mizerak v. County of Middlesex, supra,* not require a different result but, rather, supports our conclusion.

Before discussing *Mizerak,* we digress briefly to explain the various options afforded local governments with the 1975 enactment of the Local Health Services Act. As the *1974 Study Commission* indicates, the intent of the 1975 Act was to encourage

county provided health services over municipal provided health services for both political and fiscal reasons. *See Mizerak v. County of Middlesex, supra,* 230 *N.J.Super.* at 579, 554 *A.*2d 476. The Act, therefore, empowers county boards of chosen freeholders to establish a vehicle to provide such health services. The boards of chosen freeholders were given two choices—1) establish an independent and autonomous county board of health, *N.J.S.A.* 26:3A2–4, which would, itself, establish a county health department, *N.J.S.A.* 26:3A2–6a; or 2) establish its own county health department, *N.J.S.A.* 26:3A2–6b. *Id.* at 579–80, 554 *A.*2d 476. Here, Monmouth County opted to enact a county board of health, to exercise all the powers of a local board of health, *N.J.S.A.* 26:3A2–3c, –5c, including the power to adopt, amend and repeal health ordinances, *N.J.S.A.* 26:3A2–8. But, though fairly independent of its political creator (the board of chosen freeholders), the Board does not escape the budgetary control thereof. *N.J.S.A.* 26:3A2–19.

This leads us to *Mizerak.* There, unlike Monmouth County, Middlesex County chose to bypass the creation of an independent, autonomous in all but budgetary concerns, county board of health. Instead, it "directly establish[ed] a county health department." *Id.* at 580, 554 *A.*2d 476. Plaintiff in *Mizerak* was employed as a sanitary inspector by the Middlesex County Health Department and sought the salary protections of *N.J.S.A.* 26:3–25.1. We noted that such a health department "is not a local or county board of health," and that, "[c]onsequently, the department is not covered by the plain language of § 25.1 [*N.J.S.A.* 26:3–25.1] which applies only to 'any board of health, municipality or group of municipalities.'" *Id.* at 580, 554 *A.*2d 476. That is not the case here.

We also observed that the legislative history did not support an extension of *N.J.S.A.* 26:3–25.1 to the Middlesex Health Department. After tracing that history, we observed that one of the concerns of the Legislature was "inadequate resources and ... municipalities' reluctance to provide adequate funding." *Id.* at

581, 554 *A*.2d 476. One of the "barrier[s] to effective health services ...," seen by the Legislature, and as an impetus for the mandate of *N.J.S.A.* 26:3–25.1, was "the friction between a local board of health and the governing body of its municipality." *Id.* at 582, 554 *A*.2d 476. This friction existed because such boards, despite their autonomy, remain at the mercy of their respective local governing bodies for fiscal approval of their budgets. *Id.* at 582–83, 554 *A*.2d 476. In *Mizerak,* the Middlesex Health Department was a direct entity of the county, not an autonomous board independent of all but the fiscal strings. *Id.* at 585, 554 *A*.2d 476.

Not so with the Monmouth County Board of Health. It, as well as the County Health Department it has created, are independent in all but its fiscal constraints. In that respect, it is dependent upon the Board of Chosen Freeholders for approval of its budget, including the salaries for its health officers and employees. *N.J.S.A.* 26:3A2–19. The motivating rationale for *N.J.S.A.* 26:3–25.1, then, applies here, whereas it did not in *Mizerak.*

Reversed and remanded. We caution that our reversal should not be read as reaching or resolving plaintiff's claims for retroactive back pay under *N.J.S.A.* 26:3–25.1. That issue was not reached by the motion judge and should be considered on remand. We do not retain jurisdiction.